**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 9 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL READ,

     Plaintiff-Appellant,

v.

No. 99-5058

(D.C. No-98-CV-937-H)
(N.D. Okla.)

THE HONORABLE ALLEN KLEIN,
Associate District Judge; THE
HONORABLE RUSSELL P. HASS,
Associate District Judge; CHUCK
RICHARDSON, District Attorney;
SHAWNA READ, now known as
SHAWNA DUNN; and SHANNON
DAVIS,

     Defendants-Appellees.

**ORDER AND JUDGMENT**[*]

Before **HENRY** and **BRISCOE** Circuit Judges, and **SHADUR**, District Judge.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Milton Shadur, Senior District Judge for the Northern District of Illinois, sitting by designation.

Michael Read appeals the district court's dismissal of his claims asserted pursuant to 42 U.S.C. § 1983 against two state court judges, his ex-wife, and his ex-wife's lawyer. In the district court proceedings, Mr. Read challenged a divorce decree entered by default by the Tulsa County District Court (hereafter "the Tulsa County Court"). He maintained that the decree was entered after service by publication and thereby violated his due process rights. For the reasons set forth below, we conclude that Mr. Read's claims against the defendant state court judges are barred by the Rooker-Feldman doctrine. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923). We further conclude that the district court properly dismissed Mr. Read's claim against his ex-wife and her lawyer on the ground that they are not state actors.

I.  BACKGROUND

In February 1990, the defendant Shawna Dunn filed a petition for divorce from Mr. Read in the Tulsa County Court. Ms. Dunn served Mr. Read by publication, and the court entered a divorce decree on April 30, 1990. The decree determined that service by publication was proper, that Mr. Read was the father of the parties' child, and that he was responsible for child support.

Mr. Read failed to comply with the child support obligations set forth in the

2

decree. In December 1996, Ms. Dunn filed an application for contempt in the Tulsa County Court, alleging that Mr. Read was $32,055.40 in arrears. Mr. Read moved to dismiss the contempt application, asserting that he had not been properly served in the divorce proceedings. The Tulsa County Court denied Mr. Read's motion, and he then filed a Petition to Vacate Void Judgment, which the court also denied.

In April 1997, the Tulsa County Court held a non-jury trial on this first contempt charge. It granted judgment to Ms. Dunn for $32,659.20. However, the court withheld a finding on the issue of whether Mr. Read should be held in contempt for having failed to pay child support. Aple's Supp. App. at 34, ¶ 4.

Mr. Read then mounted two challenges to the contempt ruling: (1) he appealed the $32,659.20 judgment to the Oklahoma Supreme Court; and (2) he filed a petition for a writ of prohibition with the same court. The Oklahoma Supreme Court entered a writ staying contempt proceedings pending the resolution of the appeal, and it assigned the appeal of the contempt ruling to the Oklahoma Court of Appeals. That court affirmed the Tulsa County Court's contempt ruling and denied Mr. Read's petition for rehearing. The Oklahoma Supreme Court then denied Mr. Read's petition for a writ of certiorari.

Next, Mr. Read filed a chapter 13 bankruptcy petition and initiated an adversary proceeding requesting the bankruptcy court to vacate the divorce decree. The bankruptcy court dismissed the adversary proceeding in October 1998.

Subsequently, the Tulsa County Court resumed proceedings on Ms. Dunn's

3

application to hold Mr. Read in contempt. In December 1998, it found Mr. Read in indirect contempt for failing to pay child support through April 28, 1997, and it sentenced him to six months in the Tulsa County jail. The court set a purge fee of $3,000, which Mr. Read paid.

Mr. Read then filed the instant § 1983 action against the two state court judges, the Tulsa County prosecutor, Ms. Dunn, and Shannon Davis (Ms. Dunn's lawyer in the divorce proceedings). He sought a temporary restraining order barring enforcement of the divorce decree as well as damages against Ms. Dunn and Shannon Davis. The federal district court denied application for the restraining order and dismissed the case, reasoning that the defendant judges and the defendant prosecutor were entitled to absolute immunity and that Ms. Dunn and Shannon Davis were not state actors and thus not subject to § 1983 liability.

Mr. Read proceeded to file another petition for a writ of prohibition in the Oklahoma Supreme Court. He again requested the court to enter an order barring the collection of child support pursuant to the 1990 decree. The Oklahoma Supreme Court again denied Mr. Read's request.

Ms. Dunn then filed a second application for contempt in the Tulsa County Court, asserting that Mr. Read had failed to pay child support from May 1997 through February 1999. In March 1999, the court conducted a jury trial on this second contempt charge. It again found Mr. Read guilty of indirect contempt of court and sentenced him to six

4

months' incarceration in the Tulsa County jail.  Mr. Read refused to pay the $9,200 purge fee and served his sentence.  He challenged his confinement in a petition for a writ of habeas corpus, which the Oklahoma Supreme Court denied.  Mr. Read also filed an appeal of the March 1999 contempt ruling.

In a July 2000 ruling on the appeal of the second contempt proceeding, the Oklahoma Court of Appeals agreed with Mr. Read that the issuance of the 1990 divorce decree had been improper.  See Read v. Read, No. 92,930 (Okla. Ct. App. July 18, 2000).  The court observed that the record in the divorce proceeding "does not reflect any entry concerning the issuance of summons or any return reporting an unsuccessful attempt to serve summons."  Id., slip op. at 4.  The record also did not reflect "any entry concerning an attempt to serve [Mr. Read] by mail at the 'last known address' set out in the petition or any other attempted and unsuccessful service by mail."  Id.  The court invoked an Oklahoma Supreme Court decision holding that "'[w]here names and addresses of adverse parties are known . . . notice of pending proceedings by publication service alone, is not sufficient to satisfy the requirements of due process under federal or Oklahoma constitutions.'"  Id. (quoting Johnson v. McDaniel, 569 P.2d 977, 981 (Okla. 1977)).  Thus, the court concluded, "we agree with [Mr. Read] that the decree of divorce by default herein must be set aside because the trial court had no jurisdiction over [Mr. Read] by reason of [Ms. Dunn's] failure to comply with the mandates of due process for service by publication."  Id. at 5 (emphasis added).  It remanded the case to the trial court,

5

"with directions to reopen the divorce proceeding to allow [Mr.] Read to be heard on the merits of any issue bearing on his liability for child support." Id. at 8.[1]

## II.  DISCUSSION

Mr. Read first challenges the district court's conclusion that the defendant state court judges are entitled to immunity from his claim seeking an injunction prohibiting enforcement of the 1990 divorce decree.  See Aplt's Br. at 2.  He argues that, because the judges acted without jurisdiction in enforcing the decree, they are not entitled to immunity.  Mr. Read also argues that, because Ms. Dunn and Shannon Davis are state actors, the district court also erred in dismissing his due process claim against them.  We review de novo the legal conclusions on which the district court based its dismissal of the complaint.  See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

### A.  Claim for Injunctive Relief Against the State Court Judges

Mr. Read's claim for injunctive relief against the state court judges constitutes a challenge to the validity of the Tulsa County Court's April 1990 divorce decree.  His complaint in this case seeks a judgment "adjudicating that said default judgment is void and that [the defendants] are barred from taking any action to enforce said judgment."

---

[1] The court also explained that a decision about the $3,000 purge fee should be held in abeyance until the trial court revisited the issues bearing on child support.  See Read v. Read, No. 92,930, slip op. at 9 n.2 (Okla Ct. App. July 18, 2000).

6

Aple's Supp App. at 5 (Plaintiff's Complaint, filed Dec. 10, 1998).

Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction to review state court judgments. Facio v Jones, 929 F.2d 541, 544 (10th Cir. 1991) (noting that "[w]here a constitutional issue could have been reviewed on direct appeal by the state appellate courts, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983") (internal quotation marks omitted); Anderson v. State of Colorado, 793 F.2d 262, 264 (10th Cir. 1986) (noting that federal district courts do no have jurisdiction to review final state court judgments in judicial proceedings). The losing party in a state court proceeding is generally barred "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). Review of the state court judgment must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257. See Facio, 929 F.2d at 543.

The Rooker-Feldman doctrine bars not only direct review of state court judgments in federal court but also consideration of claims that are "inextricably intertwined" with the state court judgment. Id. (citing Feldman, 460 U.S. at 483-84 n.16). However, as this circuit has explained, "if the purpose of a federal action is separable from and collateral to a state court judgment, then the claim is not inextricably intertwined merely

7

because the action necessitates some consideration of the merits of the state court judgment." Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1170 (10th Cir. 1998) (internal quotation marks omitted). Determining whether a federal claim is "inextricably intertwined" with the state court judgment may be difficult. See Young v. Murphy, 90 F.3d 1225, 1231 (7th Cir. 1996). "The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996).

Here, Mr. Read's claim against the state court judges directly challenges the state court divorce decree. Notably, the claim repeats arguments that he raised in his various state court challenges to the Tulsa County Court's divorce decree. Furthermore, the Oklahoma Court of Appeals's July 2000 ruling demonstrates the availability of a state court remedy for the alleged deficiencies in the entry of that decree. Any further review of the state court decision must come from the Oklahoma Supreme Court and the United States Supreme Court rather than the federal district court. See Facio, 929 F.2d at 543. Applying the Rooker-Feldman doctrine, we therefore conclude that we lack jurisdiction over Mr. Read's claim against the state court judges.


### B. Claim Against Ms. Dunn and Shannon Davis

Mr. Read's claim for damages against Ms. Dunn and Shannon Davis involves

somewhat different considerations. As to that claim, he alleges that Ms. Dunn "knew the last known address of [Mr. Read] and . . . knew the address of his parents and a brother, but did not mail notice to [Mr. Read] at his last known address, nor to his parents' known address, nor to his brother['s] known address, thereby depriving [Mr. Read] of his right to due process." Aple's Supp App. at 2 (Plaintiff's Complaint, filed Dec. 10, 1998). As Judge Posner has observed, there are limitations on the scope of the Rooker-Feldman doctrine when a plaintiff alleges that state procedures have been corrupted:

> Were [the plaintiff] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the [Rooker-Feldman] doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the Rooker-Feldman doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm. . . . Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment, as alleged in cases such as Dennis v. Sparks, [449 U.S. 24 (1980)], and Casa Marie, Inc. v. Superior Court, [988 F.2d 252, 259 (1st Cir.1993)]. This result would be inconsistent with cases in which, for example, police officers are sued under 42 U.S.C. § 1983 for having fabricated evidence that resulted in the plaintiff's being convicted in a state court.

Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995). However, we need not resolve the "difficult question," id. at 1004, of whether the Rooker-Feldman doctrine applies to these claims because the defendants Ms. Dunn and Shannon Davis are entitled to

9

judgment in their favor for a different reason—because they are not state actors.

In order to prevail on a § 1983 claim alleging a deprivation of constitutional rights, a plaintiff must show that he was injured as a result of state action. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 (1982); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). Thus, private conduct, "no matter how discriminatory or wrongful," may not be redressed by a § 1983 claim. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

The Supreme Court "has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." Gallagher, 49 F.3d at 1447. Thus, a party may be considered a state actor if: (1) "'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself[,]'" see id. at 1448 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351(1974)); (2) the state "'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity[,]'" id. at 1451 (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961)); (3) a private party is a "'willful participant in joint action with the State or its agents[,]'" id. at 1453 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)); and (4) the state delegates to the private party a function "'traditionally exclusively reserved to the State[,]'" id. at 1456 (quoting Jackson, 419 U.S. at 352).

In this case, Mr. Read's argument that Ms. Dunn and Shannon Davis are state

10

actors is based primarily on the Supreme Court's decision in <u>Lugar v. Edmondson Oil Company</u>, 457 U.S. 922 (1982). There, the Court considered a due process claim brought by a debtor against a private company that had initiated prejudgment attachment proceedings. Under the Virginia procedure at issue, the private company filed an ex parte petition alleging that the debtor might be disposing of property to defeat his creditors. Acting on that petition, the clerk of the state court issued a writ of attachment, and the county sheriff executed the writ. The Court rejected the conclusion of a lower court that "'joint participation' required something more than invoking the aid of state officials to take advantage of state-created attachment procedures." <u>Id.</u> at 942. It explained that "[w]hatever may be true in other contexts, this is sufficient [i.e. invoking the aid of state officials to take advantage of state-created attachment procedures] when the State has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute." <u>Id.</u> Mr. Read attempts an analogy to the facts of that case, maintaining that, like the private corporation in <u>Lugar</u>, Ms. Dunn and Shannon Davis obtained the aid of state officials (the defendant judges) in order to obtain the divorce decree and the various subsequent orders enforcing it.

Although <u>Lugar</u> adopts an expansive test for state action, the decision "is carefully limited to prejudgment seizures of property." 1 Martin A. Schwartz § John E. Kirklin, <u>Section 1983 Litigation: Claims, Defenses, and Fees</u>, § 5.14, at 291 (2d ed. 1998). In other contexts, a private party's "mere invocation of state legal procedures" does not

11

constitute joint participation and thus is not state action.  Id.   Accordingly, this circuit and several others have held that private parties to litigation and their lawyers are not state actors.  See Barnard v. Young, 720 F.2d 1188, 1189 (10th Cir. 1983) (concluding that application of Lugar "does not change the vast weight of authority that private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983"); Lindley v. Amoco Prod. Co., 639 F.2d 671 (10th Cir. 1981) (concluding that an attorney and a corporation were not state actors when they obtained an order from a court allowing the attorney to enter the plaintiff's home to seal files); Torres v. First State Bank of Sierra County, 588 F.2d 1322, 1326-27 (10th Cir. 1978) ("We do not think that the 'color of law' reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court itself, subject to immediate modification by a court having jurisdiction over the parties, and subject to the normal processes of appeal."); see also Catz v. Chalker, 142 F.3d 279, 289 (6th Cir. 1998) (concluding that an attorney was not a state actor); Hoia v. Vo, 935 F.2d 308, 313 (D.C. Cir. 1991) (affirming dismissal of a § 1983 claim against a private party and a lawyer and noting that "[i]t is well established that mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983").

Significantly, Mr. Read has not cited any authority other than Lugar for the proposition that parties to litigation and their lawyers may become state actors merely by

12

obtaining orders from a state court judge. Such a rule would greatly expand the universe of state actors, and we decline to adopt such a new approach here. We therefore conclude that the district court properly dismissed Mr. Read's claims against Ms. Dunn and Ms. Davis.

### III.  CONCLUSION

As to Mr. Read's claims against state court Judges Klein and Hass, we conclude that the district court lacked jurisdiction pursuant to the Rooker-Feldman doctrine. We therefore VACATE the district court's judgment as to that claim and remand the case to the district court with instructions to dismiss the claim for lack of jurisdiction  As to Mr. Read's claims against Ms. Dunn and Shannon Davis, we AFFIRM the district court's dismissal for failure to state a claim upon which relief can be granted.

Entered for the Court,

Robert H. Henry
Circuit Judge

**No. 99-5058, <u>Read v. Klein</u>**

BRISCOE, Circuit Judge, concurring:

I concur in the majority's ruling that the Rooker-Feldman doctrine precludes further litigation against Judge Klein and Judge Hass in federal court. I write separately because I disagree with the majority's decision not to decide whether to apply the Rooker-Feldman doctrine to the claims against Shawna Dunn and Shannon Davis. In my view, the Rooker-Feldman doctrine clearly applies to these claims and, as jurisdiction is a threshold issue, I would decide the case on Rooker-Feldman grounds.

The Rooker-Feldman doctrine bars consideration by federal courts of claims that are "inextricably intertwined" with state court judgments. <u>Facio v. Jones</u>, 929 F.2d 541, 543 (10th Cir. 1991). Evaluating Read's claim for damages against Dunn and Davis would require the federal district court to determine whether the state court had entered a default judgment against Read without adequate notice. The federal court would thus be evaluating whether the state court's decision that notice was proper was correct. This is the sort of collateral review of state court decisions that is barred by the Rooker-Feldman doctrine. <u>See</u> <u>Anderson v. Colorado</u>, 793 F.2d 262, 264 (10th Cir. 1986). I would, therefore, also dismiss the claims against Dunn and Davis for lack of jurisdiction.