Dennis E. **RIGLER**, Plaintiff,

v.

Robert O. **LAMPERT**, Director, Wyoming Department of Corrections; Steve Hargett, Warden, Wyoming Department of Corrections Medium Correctional Institution; the Wyoming Department of Corrections; Prison Health Services; and Corizon Medical, in their individual and official capacities, Defendants.

Case No. 15–CV–154–S

United States District Court, D. Wyoming.

Signed 03/31/2017

Dennis Eugene Rigler, Newcastle, WY, pro se.

Jesse Naiman, Cheyenne, WY, Kathleen B Dixon, Chapin & Dixon, Casper, WY, for Defendant.

**ORDER GRANTING MOTION TO DISMISS, MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, AND MOTION FOR SUMMARY JUDGMENT**

SCOTT W. SKAVDAHL, UNITED STATES DISTRICT JUDGE

This matter is before the Court upon an amended *pro se* prisoner civil rights complaint, [ECF No. 8], filed *in forma pauperis*, [ECF No. 6], pursuant to 42 U.S.C. § 1983, by Dennis E. Rigler, Plaintiff. Currently pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Corizon Health, Inc. (Corizon) [ECF No. 23], as well as Motions for Partial Judgment on the Pleadings, and Summary Judgment, by Robert O. Lampert, Steve Hargett, and the Wyoming Department of Corrections (Wyoming (Wyoming Defendants). [ECF No. 47; ECF No. 49].

The Court, having carefully considered each pleading, the parties' motions, responses, briefs and attachments thereto and being otherwise fully advised, FINDS the Motion to Dismiss, and the Motions for Partial Judgment on the Pleadings, and Summary Judgment should be GRANTED.

**FACTUAL BACKGROUND**

Following his 1996 convictions for various crimes Plaintiff became an inmate in the Wyoming Department of Corrections facilities and at the time of the events giving rise to his allegations was housed at the Wyoming Medium Correctional Institution (WMCI). [ECF No. 8, p. 1]; *see also Rigler v. State*, 941 P.2d 734 (Wyo. 1997). Plaintiffs initial complaint in this matter was filed on September 3, 2015, alleging various claims including (1) violations of various civil rights under 42 U.S.C. § 1983, based upon violations of the Eighth Amendment; (2) violations of the Americans with Disabilities Act (ADA); (3) violations of the Rehabilitation Act (RA); (4) violations of the CAT Treaty; and (4) violations of 18 U.S.C. §§ 241 and 242. [ECF No. 1, p. 1]. Thereafter, on January 4, 2016, Plaintiff filed an amended complaint wherein he alleges that when a prison fire alarm went off on or about April 27, 2011, his already compromised hearing received further injury which resulted in permanent damage to his auditory nerve. [ECF No. 8, p. 9]. He asserts, in the process of receiving assistance for this medical condition, his "high quality hearing aids were replaced with inferior hearing aids that make it difficult for him to handle noise interference and very difficult to use the phone to communicate with his outside contacts, an activity afforded other inmates." [ECF No. 8, p. 10].

Plaintiff specifically claims a Corizon employee, Nurse Friendly, removed one of

his "high quality hearing aids purchased by [him] at his own expense under the pretense of sending it to get tested," and when it was returned to him, it had been "smashed beyond repair, leaving [him] with only one functional hearing aid." [ECF No. 8, p. 10] He asserts Sergeant McCartney[1] then confiscated his damaged hearing aid as well as his other high-quality hearing aid, and they were replaced with lower-quality hearing aids. [ECF No. 8, p. 10]. He further argues having lower-quality hearing aids renders him "unable to adequately enjoy the benefits of telephone conversations, watching television, listening to music, [and] carrying on personal, medical and legal conversations" without yelling or repeating statements. [ECF No. 8, p. 10]. It also exposes him to problems with the corrections officers who believe he is ignoring them when he simply is incapable of hearing them. [ECF No. 8, p. 11]. Plaintiff also alleges the Wyoming Department of Corrections has "refused to pay their bills in relation to [him], resulting in [his] credit rating being damaged." He states Warden Hargett "has supposedly corrected this problem numerous times without any type of progress." [ECF No. 8, p. 11].

Plaintiff has concerns as well with a medical visit on September 24, 2015. He alleges after the fire alarm caused damage to his ears, the nurses found "dried blood in his ear but no other obvious indicator of new damage." The Corizon nurses (who he does not name) told him to take Alka-Seltzer Plus. He has received no additional treatment "in relation to this complaint." [ECF No. 8, pp. 11, 12]. Plaintiff asserts he attempted to correct these problems by appealing to Director Lampert through the grievance process. [ECF No. 8, p. 8]. Plaintiff also attaches to his Amended

Complaint a "Transcription of supporting documents" wherein he summarizes alleged inmate communications and grievance responses but does not attach the actual documents transcribed. [ECF No. 8, p. 14–20].

Plaintiff, under the heading "Recompense Sought" seeks: (1) replacement of his two "high quality hearing aids" (2) "correction of his credit rating" (3) permission to purchase amplified headphones; (4) adequate medical treatment for his hearing issues; (5) prosecution of "those who have violated 18 U.S.C. § 241 and 18 U.S.C. § 242"; and (6) "the sum of $8,737,000.01 for the deliberate wrongs done to him...". [ECF No. 8, pp. 12, 13].

Defendants have filed several dispositive motions challenging the legal sufficiency and factual basis of Plaintiff's claims. Corizon Health, Inc. has filed a Motion to Dismiss [ECF No. 24] asserting that Plaintiff's claims, to the extent asserted against Corizon and/or it's nurses, contain insufficient factual allegations to support any plausible claim for relief or the legal basis for relief is not recognized and should be dismissed. The State Defendants have filed a Motion for Partial Judgment on the Pleadings [ECF No. 47 and 48] in which they assert all but Plaintiffs claims under the Rehabilitation Act fail as a matter of law. As to Plaintiffs claim under the Rehabilitation Act, the State Defendants have filed a Motion for Summary Judgment and materials in support thereof [ECF No. 49 and 50] asserting Plaintiff failed to exhaust his administrative remedies via the prison grievance process and thus his claim must be dismissed. *See Snyder v. Harris*, 406 Fed.Appx. 313 (10th Cir. 2011).

---

**1.** Respondents Wyoming Defendants suggest Plaintiff is referring to Sergeant Timothy McCarty. Sergeant McCarty passed away on December 11, 2013. [ECF No. 48, p. 3; ECF No. 50, p. 3].

## STANDARD OF REVIEW

Motion for Judgment on the Pleadings

■ "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same standard applied in considering a motion to dismiss under Rule 12(b)(6). *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1118 (10th Cir. 2005); *see also Fleming v. Coulter*, 573 Fed.Appx. 765, 768 (10th Cir. 2014); *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) requires the Court to determine whether a plaintiff has pled sufficient facts to state a plausible claim.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation marks and internal citations omitted). *See also Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

Two principles underlie this standard. First, only factual allegations are given weight in the analysis. Simple naked asser-tions devoid of factual enhancement are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. at 678–679, 129 S.Ct. 1937. Second, only plausible claims survive. *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.

*Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (quotation marks and internal citations omitted). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–1248 (10th Cir. 2008), and *Silver v. Glass*, 459 Fed. Appx. 691, 694–696 (10th Cir. 2012). In discussing this plausibility standard, the Court in *Iqbal* noted "a sheer possibility that a defendant has acted unlawfully" is insufficient to withstand a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). If the allegations of the complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks omitted). *See also United States ex rel. Hanlon v. Columbine Mgmt. Servs., Inc.*, No. 16-1147, 676 Fed.Appx. 787, 791, 2017 WL 281734, at *3 (10th Cir. Jan. 23, 2017).

The United States Supreme Court has been particularly critical of complaints which are vague on specifics, and leave defendants little idea where to begin when seeking to respond to conclusory allegations. *Robbins v. Oklahoma*, 519 F.3d at 1248 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Plaintiff is *pro se*, thus his complaint should be construed liberally. *Jordan v. Sosa, ADX*, 654 F.3d 1012, 1018, fn. 8 (10th Cir. 2011); *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Garza v. Davis*, 596 F.3d 1198, 1201 n. 2 (10th Cir. 2010). It is not, however, the "proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

 Dismissal of a *pro se* complaint under Rule 12(b)(6) should ordinarily be without prejudice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Dismissal with prejudice, however, is proper "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (quoting *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 806 (10th Cir. 1999)).

These same considerations apply as well in cases subject to qualified immunity defenses wherein "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d at 1249.

## Summary Judgment

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted).

In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). "However, unsupported conclusory allegations do not create a genuine issue of fact." *Id.* (internal quotations and citations omitted). "[M]ere speculation unsupported by evidence is insufficient to resist summary judgment." *Martinez v. CO2 Serv., Inc.*, 12 Fed.Appx. 689, 695 (10th Cir. 2001) (citations omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002). "Although a *pro se* plaintiffs pleadings are construed liberally and held to a less stringent standard than pleadings drafted by lawyers, Plaintiff must nevertheless set forth sufficient admissible facts to support his claims. *Hall v. Bellmon*, 935 F.2d 1106, 1110–12 (10th Cir.1991)." *McMahan v. Wilder*, 131 Fed.Appx. 125, 127 (10th Cir. 2005).

## ANALYSIS OF CLAIMS

1. Statute of Limitations

 Plaintiffs original Complaint was filed on September 1, 2015, based upon the prison mailbox rule. [ECF No. 1, p. 12].

*See Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005). A § 1983 claim accrues upon the date of the incident or when the Plaintiff knows or has reason to know of the injury upon which the action is based. *See Gee v. Pacheco*, 627 F.3d 1178, 1190 (10th Cir. 2010). The limitation period in which a § 1983 complaint must be filed in order to be timely is determined by the applicable state limitation statute for recovery of damages for personal injury. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985); *Gee v. Pacheco*, 627 F.3d 1178, 1189–1190 (10th Cir. 2010); *Weldon v. Ramstad-Hvass*, 512 Fed.Appx. 783, 791 (10th Cir. 2013). The applicable Wyoming limitations period is established under Wyo. Stat. § 1–3–105(a)(iv)(C) which allows four years from the alleged date of injury within which a Plaintiff must file his or her complaint. *Gee, supra* at 1190.

Plaintiffs complaint fails to provide a specific date from which he asserts a § 1983 violation. Aside from an April 2011 exposure to a fire alarm, an attachment to Plaintiffs amended complaint indicates the allegations which he makes in support of his complaint occurred, at the earliest, beginning in January, 2012. [ECF No. 8, p. 15 ¶ 9]. To the extent Plaintiff alleges a claim based upon an injury and acts prior to September 1, 2011, they would be barred. Plaintiffs Amended Complaint alleges he suffered damages to his ears as a result of the prison fire alarm being activated on or about April 11, 2011, which is beyond the statute of limitations, nonetheless, it appears, and this Court will construe Plaintiffs claims being based upon subsequent actions and/or inactions by Defendants which appear to have occurred on or after September 1, 2011.

2. CAT Treaty and Alleged Violations under 18 U.S.C. §§ 241 and 242

■ The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT") is not self-executing and does not provide Plaintiff with a private right of action against any of these Defendants. *See Renkel v. U.S.*, 456 F.3d 640, 644–45 (6th Cir. 2006); *Brown v. Victor*, 337 Fed.Appx. 239 (3rd Cir. 2009); *Torrez v. Correctional Corp. of America*, 2008 WL 191983 (D.Ariz. January 22, 2008). Similarly, Plaintiffs claims based upon 18 U.S.C. §§ 241 and 242, Federal criminal statutes, do not provide for a private civil cause of action. *See Henry v. Albuquerque Police Dept.*, 49 Fed.Appx. 272 (10th Cir. 2002); *Gallacher v. Kisner*, 2009 WL 2058432 (D. Utah July 15, 2009).

Accordingly, Defendants' Motions to Dismiss and for Judgment on the Pleadings will be granted with prejudice as to Plaintiffs CAT and claims based upon 18 U.S.C. §§ 241 and 242. As a matter of law Plaintiff cannot state a claim for relief based upon this treaty or statutes.

3. Failure to Exhaust Administrative Remedies

■ The Wyoming Defendants have alleged Plaintiff has failed to exhaust the available administrative remedies before filing this § 1983 action. [ECF No. 22, p. 7 ¶ 10; Doc. 50, pp. 4–9]. The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, in pertinent part, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The United States Supreme Court has stated the failure by an inmate to exhaust administrative remedies as required by the PLRA is an affirmative defense. "We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not re-

quired to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Marshall v. Lee*, 529 Fed.Appx. 898, 900 (10th Cir. 2013). The Supreme Court, in *Porter v. Nussle*, determined the intent of Congress in enacting the PLRA was to reduce the quantity and improve the quality of prisoner filed litigation. This goal was met by Congress affording "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S. at 525, 122 S.Ct. 983. a prisoner satisfies § 1997e(a)'s exhaustion requirement so long as the administrative grievance provides prison officials with enough information to investigate and resolve his or her complaint. *Kikumura v. Osagie*, 461 F.3d 1269, 1284 (10th Cir.2006), *overruled in part on other grounds by Robbins v. Okla. ex. rel. Dep't of Human Servs.*, 519 F.3d 1242, 1246–47 (10th Cir.2008). A prisoner's duty to exhaust administrative remedies, therefore, is fulfilled when prison officials are given adequate notice of the nature of his complaint. *Id.* *Saleh v. Wiley*, No. 09-CV-02563-PAB-KLM, 2012 WL 4356219, at *1 (D. Colo. Sept. 24, 2012), *amended sub nom. Saleh v. United States*, No. 09-CV-02563-PAB-KLM, 2013 WL

1751885 (D. Colo. Apr. 23, 2013), *aff'd*, 588 Fed.Appx. 758 (10th Cir. 2014)

The Supreme Court, in *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), reiterated the importance of these goals, and held "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. at 93, 126 S.Ct. 2378. The *Woodford* decision reversed a Ninth Circuit decision which had concluded an inmate had sufficiently exhausted his administrative remedies by filing an untimely grievance. The Ninth Circuit reasoned the inmate had exhausted administrative remedies "simply because no such remedies remained available to him." *Woodford v. Ngo*, 548 U.S. at 87, 126 S.Ct. 2378. The Supreme Court, in reversing, reasoned "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Woodford v. Ngo*, 548 U.S. at 95, 126 S.Ct. 2378. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "[T]he doctrine of substantial compliance does not apply." *Id.* *See also Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010). To exhaust a prisoner must complete all steps as required in the grievance process. *See Chapman v. Lampert*, 555 Fed.Appx. 758, 761 (10th Cir. 2014). Neither is an inmate permitted to complete the administrative exhaustion process after he has filed his lawsuit. *See Snyder v. Harris*, 406 Fed.Appx. 313, 317 (10th Cir. 2011) citing with approval *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).[1]

---

1. In an effort to cure any deficiencies associated with exhaustion requirements Plaintiff has submitted various "supplements" to his civil rights complaint which are grievances that were filed or purported summaries of grievances that have been filed, all subsequent to the Complaint filed in this matter and many asserting claims outside the scope of Plaintiff's original Complaint. [See ECF No. 56, 68, 78, 80].

The procedural requirements for Wyoming inmates to exhaust administrative remedies are defined by state law, by WDOC policies and procedures, not federal law. *Kikumura v. Osagie*, 461 F.3d 1269, 1282 (10th Cir. 2006) ("Since § 1997e(a) does not specify the procedural requirements necessary for exhaustion, 'the rules come from the prison grievance systems themselves-state law for state prisons, federal administrative law for federal prisons.' ").

■ With the exception of problems with his hearing and treatment relating thereto no pre-litigation resolution was possible in the present case as Plaintiff did not follow the grievance procedure in place, failed to exhaust his administrative remedies, with regard to the allegations set forth in his amended complaint. Plaintiff never completed any grievance process regarding alleged ADA or RA claims associate with his hearing. Neither did Plaintiff complete any grievance process concerning the alleged damage to his original hearing aid or the inadequacy of the replacement hearing aids received.

Wyoming Department of Corrections Policy and Procedure # 3.100 governs inmate grievance procedures in Wyoming prisons. "[T]his policy establishes the

available administrative remedies that the courts may require to have been exhausted prior to proceeding in an action brought under 42 U.S.C. § 1983." [ECF No. 50–1, Affidavit of C. J. Young; [ECF No. 50–2, p. 2][2]. Inmates, under this policy, may grieve a "dispute concerning a condition of the inmate's confinement that is within the jurisdiction of the correctional facility and WDOC . . . ." [ECF No. 50–2, p. 14].[3] And, under a 2011 revision, inmates may also grieve a "dispute concerning the inmate's health care that has not been resolved through the medical department's own resolution process . . ." [ECF No. 5–02, p. 14].[4]

The grievance procedure first requires the inmate to directly communicate with the appropriate staff member. [ECF No. 50–2, p. 8].[5] Second, if face-to-face verbal communication fails, an "inmate shall use [an inmate communication form] to communicate to facility staff at the lowest level of responsibility for resolving or responding to the question/issue . . . ." [ECF No. 50–2, p. 8].[6] Third, if the inmate is not satisfied, they may then file an inmate grievance form. [ECF No. 50–2, p. 10].[7] This form goes to the facility's grievance manager. [ECF No. 50–2, p. 20].[8] Fourth, if still not satisfied, an inmate may appeal to the facility's warden. [ECF No. 50–2, p. 24].[9] Fifth, and finally, if an inmate is still

**2.** *See also* Doc. 50–3, p. 2; Doc. 50–4, p. 2; Doc. 50–5, p. 2; Doc. 50–6, p. 2; Doc. 50–7, p. 2; Doc. 50–8, p. 2. The Wyoming Defendants provided copies of the grievance procedure which has existed since 2007. The DOC, according to the Wyoming Defendants, frequently updates this procedure, however, they indicate the basic 5-step process has not changed during the relevant time period. [ECF No. 50, p. 4 fn. 2].

**3.** 3 *See also* Doc. 50–3, p. 14; Doc. 50–4, p. 13; Doc. 50–5, p. 13; Doc. 50–6, p. 13; Doc. 50–7, p. 13; Doc. 50–8, p. 12.

**4.** *See also* Doc. 50–3, p. 14; Doc. 50–4, p.13; Doc. 50–5, p. 13; Doc. 50–6, p. 13.

**5.** *See also* Doc. 50–3, p. 8; Doc. 50–4, p. 8; Doc. 50–4, p. 8; Doc. 50–6, p. 8; Doc. 50–7, pp. 7–8; Doc. 50–8, pp. 7–8.

**6.** *See also* Doc. 50–3, p. 8; Doc. 50–4, p. 8; Doc. 50–5, p. 8; Doc. 50–6, p. 8; Doc. 50–7, p. 8; Doc. 50–8, p. 8.

**7.** *See also* Doc. 50–3, p. 10; Doc. 50–4, p. 10; Doc. 50–5, p. 10; Doc. 50–6, pp. 9–10; Doc. 50–7, p. 9; Doc. 50–8, p. 9.

**8.** *See also* Doc. 50–3, p. at 20; Doc. 50–4, p. 19; Doc. 50–5, p. 19; Doc. 50–6, p. 18; Doc. 50–7, p. 17; Doc. 50–8, p. 17.

**9.** *See also* Doc. 50–3, p. 23; Doc. 50–4, p. 22; Doc. 50–5, p. 22; Doc. 50–6, p. 21; Doc. 50–7, p. 20; Doc. 50–8, p. 19.

not satisfied, he may appeal to the director of the DOC. [ECF No. 50–2, p. 29].[10]

Plaintiff, since 2011, has filed only four grievances which completed all five steps of the required process and ended with an appeal to Director Lampert. [ECF No. 50–9, ¶¶ 7–8]. The first two appeals concern an incident with medical staff in 2013. Due to his hearing difficulties Plaintiff asked to see an off-site specialist and complained a nurse was "flippant with him." Director Lampert's decision letter, in denying the appeal, suggests if Plaintiff wants his hearing aid tuned, or believes he has "a sinus infection, please submit the appropriate form with these concerns to the medical department to allow appropriate follow up." [ECF No. 50–10; Doc. 50–11].

The third grievance appeal concerns a request by Plaintiff to participate in a dog-training program. [ECF No. 50–12].

The fourth appeal, filed on March 7, 2016, after Plaintiff filed his Complaint in this matter, addresses Plaintiffs attempt to receive batteries for his hearing aid. [ECF No. 50–13].

The amended complaint contains a "[t]ranscription of supporting documents." [ECF No. 8, pp. 14–20]. None of these pages reference any additional grievance appeals which Plaintiff filed with the Department of Corrections. And the four issues stated in the complaint, i.e., 1) the fire alarm damaging his ears; 2) the DOC replacing his high-quality hearing aids with lower-quality hearing aids; 3) his credit report; and 4) the medical treatment he received in September, 2015, [ECF No. 8, pp. 9–12], raise grievable issues under DOC policy as they concern conditions of confinement within the DOC's jurisdiction which did not reached

Director Lampert in any grievance process. [ECF No. 50–9, ¶¶ 7–8].[11]

Plaintiff, having failed to exhaust such administrative remedies as are available, the Court must dismiss without prejudice each of his claims, with the exception of his claims regarding treatment of his hearing problems. Nonetheless, even presuming, for purposes of discussion, a finding of exhaustion could not be made, each of his claims, including the treatment of his hearing problems, lack sufficient factual or legal merit.

### 4. § 1983 Claims Against Corizon Health Inc.

 "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010). A "person acting under color of state law" must have committed the complained-of acts in the course of the performance of their duties, and have misused power they possessed by virtue of state law. *United States v. Classic*, 313 U.S. 299, 325–326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

 The Supreme Court has taken a flexible approach to what is state action. A private party may be considered a state actor if: (1) there is a close nexus between the government and the challenged conduct; (2) the state has insinuated itself into a position of interdependence with a private party; (3) a private party is a

---

**10.** *See also* Doc. 50–3, pp. 28–29; Doc. 50–4, p. 27; Doc. 50–5, p. 27; Doc. 50–6, p. 25; Doc. 50–7, pp. 24–25; Doc. 50–8, p. 24.

**11.** The Wyoming Department of Corrections is responsible for the "care and maintenance of all inmates" at WMCI. Wyo. Stat. Ann. § 25–1–104(b)(iv).

willing participant with the state or its agents; and (4) the state delegates to the private party a traditional government function. *Read v. Klein*, 1 Fed.Appx. 866, 870–871 (10th Cir. 2001). If these factors are not met, the complained-of conduct is "private conduct," and "no matter how discriminatory or wrongful, may not be redressed by a § 1983 claim." *Read v. Klein*, 1 Fed.Appx. at 870–871.

A plaintiff suing under section 1983 may recover only money damages from defendants sued in their individual capacity, and only injunctive relief from defendants sued in their official capacities. *Brown v. Montoya*, 662 F.3d at 1161, citing *Hafer v. Melo*, 502 U.S. 21, 30, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991):

> A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability, [footnote omitted] Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

*Brown v. Montoya*, 662 F.3d at 1163.

"Personal involvement is an essential allegation in a § 1983 action." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996).

> It is axiomatic that, to prevail on a damage claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, "personally participated in the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Conclusory allegations are not sufficient to state a constitutional violation. *Id.*

*Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

"[I]t is incumbent upon a plaintiff to 'identify specific actions taken by particular defendants' in order to make out a viable § 1983 or *Bivens* claim. *Tonkovich [v. Kansas Bd. of Regents]*, 159

F.3d [504]at 532 [ (10th Cir. 1998) ] (emphases added)." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013).

Section 1983 does not authorize liability under a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, to establish supervisory liability, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

*Brown v. Montoya*, 662 F.3d at 1164.

A complaint which lacks an arguable basis either in law or in fact is to be considered frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The allegations concerning Plaintiffs interaction with the Corizon medical staff set out in his amended complaint are factually insufficient, even if presumed correct, to support § 1983 liability. Plaintiffs statements with regard to Corizon Nurse Friendly simply indicate she was involved in sending his hearing aid to an outside entity for testing. Plaintiffs amended complaint and response to Defendant's Motion fails to provide any factual allegations as to how, or in what manner, she could possibly have been responsible for it being "smashed beyond repair." [ECF No. 8, p. 10].

Similarly, Plaintiffs allegations concerning the two Corizon nurses who examined him for bleeding from his ear are even more factually insufficient. He offers no specifics of what action in violation of the constitution occurred during this examination other than it was not a

proper medical examination and he has yet to see a qualified medical professional to properly evaluate his condition. Plaintiff imply disagrees with the quality extent and course of treatment the nurses suggested:

> Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation. *See id.* at 105–06, 97 S.Ct. 285. **Moreover, a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.** *See id.* at 107, 97 S.Ct. 285; *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993).

*Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (emphasis added). *See also Taylor v. Ortiz*, 410 Fed.Appx. 76, 79 (10th Cir. 2010). Even if Plaintiff's State treatment providers were negligent and failed to properly diagnose his condition, that alone does not support the requirements to establish an Eighth Amendment violation. *See Lamar v. Boyd*, 508 Fed.Appx. 711 (10th Cir. 2013).

Plaintiff has completely failed to provide even minimal factual support for any assertion of "deliberate indifference." The information attached with his complaint, quite to the contrary, indicates he received considerable attention from the medical staff with regard to his hearing complaints following the April, 2011, alarm event. [ECF No. 8, pp. 14–20]. He acknowledges that he was seen by an audiologist following the fire alarm. See ECF No. 51 p. 20]. Plaintiffs disagreement with a course of treatment or even level of treatment he received does not support a constitutional violation. *See Alster v. Goord*, 745 F.Supp.2d 317, 334–35 (S.D. New York 2010) (inmates receipt of uncomfortable hearing aids that lack certain features and delayed distribution of hearing aid batteries did not constitute deliberate indifference).

■ Finally, Plaintiffs allegation as regards Corizon Health itself are wholly inadequate to support a plausible claim for relief under either the theory of respondeat superior, supervisory authority, or vicarious liability.

■ The theory of respondeat superior, or supervisory authority, cannot be used to establish liability under§ 1983. "Section 1983, however, 'does not authorize liability under a theory of respondeat superior.'" *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014); *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). A plaintiff must show an "affirmative link" between the supervisor and the alleged constitutional violation which is something more than mere knowledge of conduct. "Rather, a plaintiff must satisfy 'three elements ... to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind.'" *Estate of Booker v. Gomez*, 745 F.3d at 435. "[I]n *Iqbal*, the Supreme Court explained that '[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). *See also Brown v. Montoya*, 662 F.3d at 1164. Plaintiff has failed to identify any "personal involvement" by anyone in a supervisory capacity with Corizon. He has thus failed

to state a plausible claim of liability under a theory of respondeat superior.

Vicarious liability is not a permissible avenue for relief against a governmental entity under 42 U.S.C. § 1983. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *Cacioppo v. Town of Vail, Colorado*, 528 Fed.Appx. 929, 931 (10th Cir. 2013. Liability may be imposed only "for [the entity's] own unconstitutional or illegal policies and not for the tortious acts of its employees." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998). The United States Supreme Court, in *Monell v. Department of Social Services*, 436 U.S. 658, 691–692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), stated a plaintiff must identify "a government's policy or custom" which caused the injury. The policy or custom must be shown to be the direct cause or "moving force" behind the constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The potential liability of a private actor fulfilling a governmental function is governed by these same standards.

> Although the Supreme Court's interpretation of § 1983 in Monell applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants. *Dickerson v. Leavitt Rentals*, 995 F.Supp. 1242, 1247 (D. Kan. 1998), *aff'd.* 153 F.3d 726 (10th Cir.1998), *cert. denied*, 525 U.S. 1110, 119 S.Ct. 882, 142 L.Ed.2d 781 (1999); *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 844 F.2d 714, 722–23 (10th Cir. 1988); *see also Jackson v. Illinois Medi–Car Inc.*, 300 F.3d 760, 766 (7th Cir.2002); *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir.2002); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir.1999); *Harvey v. Harvey*,

949 F.2d 1127, 1129–30 (11th Cir. 1992); *Rojas v. Alexander's Dep't Store*, 924 F.2d 406, 408–09 (2d Cir. 1990).

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (footnote omitted).

Plaintiff has failed to identify any policy or custom enforced by Corizon which could be considered a direct cause or "moving force" behind any alleged constitutional violation. He has thus failed to state a plausible claim for relief against Corizon as well and the State Defendants.

### 5. Claims against State of Wyoming Defendants

Plaintiff, in his amended complaint, has named Robert O. Lampert, and Steve Hargett, as defendants, both individually, and in their official capacities. [ECF No. 8, p. 1].

#### Individual Capacity

Plaintiff's allegations directed at Director Lampert and Warden Hargett are fatally flawed as he has failed to identify any specific "personal involvement" by either of them in any alleged constitutional violation. Plaintiff simply mentions Director Lampert when he asserts he has he attempted "to correct the rights violations in the administrative remedies ... including his grievance appeal to Director Lampert." [ECF No. 8, p. 8]. The simple "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). *See also Bertolo v. Benezee*, 601 Fed.Appx. 636, 639 (10th Cir. 2015) (quoting *Gallagher v. Shelton*, 587 F.3d at 1069). His only reference to Warden Hargett concerns an assertion the Department of Corrections was not paying his medical bills which damaged his credit. He states "Warden Hargett has supposedly corrected this problem numerous times without

any type of progress," [ECF No. 8, p. 11], which falls significantly short of fulfilling the § 1983 "personal involvement" requirement.

Plaintiff has utterly failed to identify any specific "personal involvement" by either Director Lampert or Warden Hargett in any alleged constitutional violation, thus dismissal of each in their individual capacity pursuant to Fed. R. Civ. P 12(b)(6) is appropriate. *Pahls v. Thomas*, 718 F.3d at 1226; *Mitchell v. Maynard*, 80 F.3d at 1444; *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d at 1193.

The Rehabilitation Act and Title II of the ADA do not permit assessment of damages against either Director Lampert, or Warden Hargett. Those Acts contain their own remedies provisions, and neither allow a court to impose liability on an individual. 42 U.S.C. § 12133; 29 U.S.C. § 794a; *Stanek v. St. Charles Community Unit School. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) (no individual liability for ADA Title II violations or Rehabilitation Act violations). *See also Moore v. Cooksey*, 242 F.3d 389 (Table) (10th Cir. 2000) (no individual liability for Rehabilitation Act violations).

*Qualified Immunity*

▮▮▮▮ Qualified immunity shields public officials from civil damage liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The United States Supreme Court recently reaffirmed this immunity standard.

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. See *Ashcroft v. al–Kidd*, 563 U.S. [731] 735–36 [131 S.Ct. 2074, 179 L.Ed.2d 1149] (2011). In *Pearson v. Cal-*

*lahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all. *Id.*, at 227 [129 S.Ct. 808]. This approach comports with our usual reluctance to decide constitutional questions unnecessarily. *Id.*, at 241 [129 S.Ct. 808]; see also *Camreta v. Greene*, 563 U.S. 692, 704–06 [131 S.Ct. 2020, 179 L.Ed.2d 1118] (2011); *al–Kidd*, 563 U.S. at 735–36, 131 S.Ct. 2074.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.*, at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." 563 U.S. at 741. This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably ... anticipate when their conduct may give rise to liability for damages.'" *Anderson, supra*, at 639, 107 S.Ct. 3034 (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

*Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2092, 182 L.Ed.2d 985 (2012).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S.

223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "We do not require a case directly on point" before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd,* 563 U.S. at 741, 131 S.Ct. at 2083.

*Stanton v. Sims,* —— U.S. ——, 134 S.Ct. 3, 4–5, 187 L.Ed.2d 341 (2013). *See also Beattie v. Smith,* 543 Fed.Appx. 850, 856 (10th Cir. 2013).

> Government defendants sued under § 1983 in their individual capacities have qualified immunity: "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which ·a reasonable person would have known." *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quotation omitted).

*Brown v. Montoya,* 662 F.3d 1152, 1164 (10th Cir. 2011).

■ The Wyoming Defendants, in response to Plaintiffs § 1983 allegations, have asserted a qualified immunity defense. [ECF No. 22, p. 7 ¶ 13; Doc. 48, p. 9]. A plaintiff, when such a defense is raised, has the burden to establish there has been a violation, by a defendant, of a clearly established constitutional right. *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009).

Plaintiff has failed to identify a constitutional right which was sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right,'" *Reichle v. Howards,* 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). And even if he has identified such right by reference to the Eighth Amendment, he has failed to set out any factual allegations of personal involvement by Robert Lampert or Steve Hargett which might impact said right, or any other any constitutional right. Qualified immunity thus also protects the Wyoming Defendants Lampert and Hargett from individual liability.

*Official Capacity*

■ Robert Lampert, as Director of the WDOC, and Steve Hargett, as Warden of WMCI, are officials and employees of the State of Wyoming through their employment by the Wyoming Department of Corrections, which is an agency of the State of Wyoming. *Wyo. Stat. § 7–13–401; Wyo. Stat. § 9–2–2012; Wyo. Stat. § 25–1–104.*

■ Any claim against a government official in their "official" capacity is, in actuality, a claim against the official's office, and thus the state, as the official is simply an agent of the government entity for which they work. *Brown v. Montoya,* 662 F.3d at 1163 (citing *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also Johnson v. Board of Commissioners for the County of Fremont,* 85 F.3d 489, 493 (10th Cir. 1996) and *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ A state, and its agencies, have immunity from suit under the Eleventh Amendment, and thus cannot be sued in federal court by a private individual with three exceptions: "(1) the state consents to

suit; (2) Congress expressly abrogates the states' immunity; or (3) the citizen sues a state official pursuant to *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) cert denied, 549 U.S. 1078, 127 S.Ct. 738, 166 L.Ed.2d 563 (2006). *See also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). There is no indication in the record before the Court the State of Wyoming has consented to suit under 42 U.S.C. § 1983 in federal court, and Plaintiffs claims against Defendants do not fall within any of the narrow exceptions to immunity enumerated in the Wyoming Governmental Claims Act (WGCA). Wyo. Stat. Ann. §§ 1–39–105 through 112.[12] The WGCA grants absolute immunity to the State of Wyoming as well as all local government entities and their officials and employees unless such immunity has been waived by the Act. *Wyo. Stat. Ann. § 1–39–104(a)*. The Act establishes a "closed-ended" waiver under which immunity is the rule, and liability is the exception. Immunity is applicable unless expressly waived by the Act. *Rice v. Collins Communications, Inc.*, 236 P.3d 1009, 1016 (Wyo. 2010); *Garman v. Campbell County School Dist. No. 1*, 630 F.3d 977, 980 (10th Cir. 2010); *Routh v. State of Wyoming ex rel. Wyoming Worker's Compensation Division*, 952 P.2d 1108, *reh. denied* (Wyo. 1998); *Harbel v. Wintermute*, 883 P.2d 359, 363 (Wyo. 1994); *Worden v. Village Homes*, 821 P.2d 1291, 1295 (Wyo. 1991). A court "must strictly construe the statutory exceptions to immunity against potential claimants and, conversely, liberally construe the grant of immunity in favor of the governmental entity." *Harbel v. Wintermute*, 883 P.2d at 364. The State of Wyoming has not consented to be sue in federal court under § 1983, and thus has not waived its Eleventh Amendment immunity.

The United States Supreme Court has also held a "State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 671, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Congress has thus not expressly abrogated a state's immunity under § 1983.

■ The third exception to Eleventh Amendment immunity derives from the United States Supreme Court decision in *Ex Parte Young* which requires fulfillment of four criteria in order for immunity to be waived:

First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating 'special sovereignty interests.' *Robinson v. Kansas*, 295 F.3d

---

**12.** The exceptions to governmental immunity are summarized as follows:

1. negligent operation of motor vehicle, aircraft or watercraft. (Wyo. Stat. Ann. § 1–39–105);

2. negligent operation or maintenance of building, recreation area or park. (Wyo. Stat. Ann. § 1–39–106);

3. negligent operation of airports. (Wyo. Stat. Ann. § 1–39–107);

4. negligent operation of public utility. (Wyo. Stat. Ann. § 1–39–108);

5. negligent operation of public medical facilities. (Wyo. Stat. Ann. § 1–39–119);

6. negligence of public health care providers. (Wyo. Stat. Ann. § 1–39–110); and

7. tortious conduct of peace officers. (Wyo. Stat. Ann. §§ 1–39–112).

*Wyo. Stat. Ann.* §§ 1–39–105 through –112.

1183, 1191 (10th Cir. 2002) (internal citations and quotations omitted).

*Opala v. Watt*, 454 F.3d at 1158.

Plaintiff has failed to present any factual pleading or argument which addresses any of the noted four criteria, thus there is no basis to find an exception to immunity pursuant to Ex Parte Young. Plaintiffs claims against the Defendants in their "official" capacity are thus barred by Eleventh Amendment immunity, and therefore subject to dismissal without prejudice. *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013)("[I]mplicit in enactment of the Eleventh Amendment is that state sovereign immunity ordinarily bars federal-court jurisdiction over private suits against a state by citizens of the state."); *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n. 9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds ... must be without prejudice."); *Shue v. Lampert*, 580 Fed.Appx. 642, 644 (10th Cir. 2014).

6. Eighth Amendment—Deliberate Indifference

 There are basically only two types of claims cognizable under the Eighth Amendment for failure to provide medical care.

> Our cases recognize two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. Where this sort of conduct is alleged, the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent. *See, e.g., Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285. The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment. *See, e.g., Ramos [v. Lamm]*, 639 F.2d [559] at 575 [ (10th Cir. 1980) ].

*Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). *See also Layton v. Board of County Commissioners of Oklahoma County*, 512 Fed.Appx. 861, 869 (10th Cir. 2013). Prison officials, under either type of conduct, can be liable only if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

 Plaintiff does not assert, and it is fairly obvious from his own pleadings, none of the Wyoming Defendants, including the Wyoming Department of Corrections, are medical professionals, thus the first type of "deliberate indifference" recognized by the Tenth Circuit is only applicable to Corizon. Plaintiff, in addition, offers no allegation or cogent argument to the effect any of the Wyoming Defendants prevented him from receiving medical treatment or denied him access to "medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d at 1211. Plaintiffs complaint and the attachments thereto, quite to the contrary, clearly set out the course of treatment provided to Plaintiff. He received a replacement for his damaged hearing aid, although not one he preferred, and when he sought medical treatment on September 24, 2015, he received it the next day. [ECF No. 8, pp. 10, 11, 12]. The second type of "deliberate indifference" is thus not applicable as well. Plaintiffs allegations, at best, simply recite his disagreement with a prescribed course of medical treatment or in particular the type of hearing aid he was provided. Such disagreement is not sufficient to support an Eighth Amendment constitutional violation.

Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation. *See id.* at 105–06, 97 S.Ct. 285. **Moreover, a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.** *See id.* at 107, 97 S.Ct. 285; *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993).

*Perkins v. Kansas Department of Corrections*, 165 F.3d at 811 (emphasis added). *See also Taylor v. Ortiz*, 410 Fed.Appx. at 79. *See also Hicks v. Anderson*, 2012 WL 1415338 (D. Colo. January 23, 2012) (mere negligence in losing or damaging of hearing aid does not support culpable state of mind required for deliberate indifference); *Alster v. Goord*, 745 F.Supp.2d 317, 334–35 (S.D. New York) (fact that hearing aids were uncomfortable, lacked certain features or the distribution of batteries for them was delayed failed to establish deliberate indifference). This is not a case where Plaintiff has been refused hearing aids—he has them, but they aren't as good as the ones he previously used. Such a situation does not establish a claim under the Eighth Amendment.

7. Americans With Disabilities Act and Rehabilitation Act

 Plaintiff, based on certain allegations in his complaint, appears to be attempting to state a claim under either, or both, the Americans With Disabilities Act (ADA), and the Rehabilitation Act (RA). [ECF No. 1, pp. 11, 14–18]. A claim under either Act is fatally flawed. Plaintiff asserts the Wyoming Department of Corrections violated both Title II of the Americans With Disabilities Act as well as the Rehabilitation Act. [ECF No. 8, pp. 4–7].

 Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Prisons are "public entities" covered by Title II of the ADA. *See Robertson v. Las Animas Cnty. Sheriffs Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). To state a claim, Plaintiff must allege (1) that he is a qualified individual with a disability; (2) that he was "either excluded from participation in or denied the benefits of some entity's services, programs, or activities, or was otherwise discriminated against by the public entity," and (3) "that such exclusion, denial of benefits, or discrimination was by reason" of his disability. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Id.* "The ADA requires more than physical access to public entities: it requires public entities to provide 'meaningful access' to their programs and services." *Robertson*, 500 F.3d at 1195. To effectuate this mandate, "the regulations require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." *Id.* (quoting 28 C.F.R. § 35.130(b)(7)).

Plaintiff also alleges the Wyoming Defendants violated the Rehabilitation Act. The elements required to state a claim under the Rehabilitation Act are the same

as those under Title II of the ADA. *Nielsen v. Moroni Feed. Co.*, 162 F.3d 604, 608 fn 7 (10th Cir. 1998).

To state a claim for disability discrimination under the Rehabilitation Act, a plaintiff must prove the same elements required to prevail under Title II of the ADA. *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n. 7 (10th Cir. 1998). The elements of a cause of action under Title II of the ADA and section 504 of the Rehabilitation Act are the same because Congress has directed courts to construe the ADA as giving at least the same amount of protection as the Rehabilitation Act. *See* 42 U.S.C. § 12201(a); *DeBord [v. Board of Educ. of Ferguson-Florissant School Dist.]*, 126 F.3d [1102] at 1104–05 [ (8th Cir. 1997) ]; *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir.1999).

*Swenson v. Lincoln Cnty. Sch Dist. No. 2*, 260 F.Supp.2d 1136, 1145 (D. Wyo. 2003).

The United States Department of Justice promulgated regulations to implement the nondiscrimination mandate of Title II. *Robertson v. Las Animas Cnty. Sheriffs Dep't.*, 500 F.3d 1185, 1195 (10th Cir. 2007) (citing *see* 42 U.S.C. § 12134(a) (requiring the Attorney General to promulgate regulations to implement Title II)). The regulations provide guidance as to the obligations of a public entity in providing services or programs to persons with a disability.

The ADA regulations provide guidance as to the obligation of a public entity to an individual with a disability in the provision of its services or programs. The focus is on "accessibility":

[N]o qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

28 C.F.R. § 35.149 (emphasis added). Interpreting this and related provisions under the ADA, the First Circuit stated as follows: "A public entity must make its service, program, or activity 'when viewed in its entirety,' 'readily accessible to and usable by individuals with disabilities,' except where compliance would result in a 'fundamental alteration' or an 'undue burden.'" *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000) (citing 28 C.F.R. § 35.150(a) and 35.150(a)(3)).

*Young v. City of Claremore, Okla.*, 411 F.Supp.2d 1295, 1306, 1307 (N. D. Okla. 2005).

The "accessibility" which is the focus of Title II of the ADA must be "meaningful access." *Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Robertson v. Las Animas Cnty. Sheriff's Dep't.*, 500 F.3d at 1195. The regulations also require public entities to "make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." *Robertson v. Las Animas Cnty. Sheriffs Dep't.*, 500 F.3d at 1195 (citing 28 C.F.R. § 35.130(b)(7)). However, "[b]efore a public entity can be required under the ADA to provide a disabled individual an auxiliary aid or service, a public entity must have knowledge of the individual's disability and the individual's need for an accommodation." *Robertson v. Las Animas Cnty. Sheriffs Dep't.*, 500 F.3d at 1196. *See also J.H. ex rel. J.P. v. Bernalillo County*, 806 F.3d 1255, 1261 (10th Cir. 2015) (*quoting Robertson v. Las Animas Cnty. Sheriff's Dep't.*, 500 F.3d at 1196).

Plaintiff offers no facts to indicate he was ever denied access to any benefits or services offered by the Wyoming Department of Corrections. He simply alleges, purportedly because of the "inferior" hearing aids he has been provided, he "has

been unable to adequately enjoy the benefits of telephone conversation, watching television, listening to music, carrying on personal, medical and legal conversation that do not require yelling and/or continual repeating of one's statements, groups, hearing announcements or even hearing warnings." [ECF No. 8, p. 10]. He cites no benefits or services provided by the Department of Corrections to other inmates which he has been denied because of his hearing limitations or specific programs he was not allowed to participate in due to his hearing problems.

Finally, Plaintiff contends his inability to adequately hear "which results in his getting into a lot of trouble with the corrections officers," and the resulting stress he suffers has the "cumulative effect of . . . . . potentially mental disorders such as depression because of his solitude . . ." [ECF No. 8, p. 11]. Plaintiff, while he has alleged damage to his already impaired hearing caused by the fire alarm, has failed to provide any factual support for his allegation. [ECF No. 8, p. 9]. He has, as well, made no allegation of sexual assault. Thus, any claim for emotional distress is statutorily barred:

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in Section 2246 of Title 18).

42 U.S.C. § 1997e(e). Plaintiff has failed to set forth a plausible claim for relief under either the ADA or RA.

### CONCLUSION AND ORDER

Having failed to completely exhaust his administrative remedies, with the exception of issues related to his hearing, this Court must dismiss Plaintiffs claims without prejudice. Even assuming Plaintiff has exhausted his administrative remedies, Plaintiff has failed to state a plausible claim for relief under § 1983 against Corizon and the Wyoming Defendants. For the reasons discussed herein, the Court FINDS the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Corizon Health, Inc., as well as the Motion for Partial Judgment on the Pleadings, and Motion for Summary Judgment by Robert O. Lampert, Steve Hargett, and the Wyoming Department of Corrections should be GRANTED.

IT IS THEREFORE HEREBY ORDERED:

(a) **ORDERED the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Corizon Health, Inc.,** [ECF No. 23] is **GRANTED**, it is further ordered;

(b) **ORDERED the Motion for Partial Judgment on the Pleadings,** [ECF No. 47] and **Motion for Summary Judgment** [ECF No. 49] by Robert O. Lampert, Steve Hargett, and the Wyoming Department of Corrections **are GRANTED;** and it is further

(c) **ORDERED** all other pending motions, if any, are **DENIED as MOOT.**

Dated this 31st Day of March, 2017.